**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

**HARRY LAWRENCE QUIGLEY,**
      **Plaintiff,**

**v.**                                 **CIVIL ACTION NO. 3:18-CV-1323**
                                           **(JUDGE JOHNSTON)**

**STEVE WILLIAMS, SCOTT DAMRON,**
**JOYCE CLARK, CHARLES McCOMAS,**
**ALEX VANCE, JENNIFER WHEELER,**
**TONIA PAGE, MARK BATES,**
**MIKE SHOCKLEY, TOM McGUFFIN,**
**TINA BROOKS, REBECCA HOWE,**
**CAROL POLAN, CITY OF HUNTINGTON,**
**DENVER C. OFFUTT, JR., STEVEN K.**
**NORD, RYAN Q. ASHWORTH,**
**ROBERT C. CHAMBERS, CHERYL A.**
**EIFERT, and OMAR ABOULHOSN,**
           **Defendants.**

## <u>PROPOSED FINDINGS AND RECOMMENDATION</u>

### I.      Introduction

Plaintiff is a resident of the City of Huntington who filed a civil rights action on September 27, 2018. ECF[1] No. 2 at 4. He filed this civil rights action pursuant to 42 U.S.C. § 1983, complaining that the City of Huntington, officials and employees of the City of Huntington, three private lawyers who represented the City of Huntington in an earlier action, and three federal judges who presided over the earlier action, have conspired to violate his civil rights.

The matter is now before the undersigned United States Magistrate Judge for a

---

[1] ECF Numbers cited herein refer to case number 3:18-CV-1323 unless otherwise noted.

Proposed Findings and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B)[2]. For the reasons set forth below, the undersigned recommends that the complaint be dismissed with prejudice as to defendants Denver C. Offutt, Jr. ("Offutt"), Steven K. Nord ("Nord"), Ryan Q. Ashworth ("Ashworth"), Robert C. Chambers ("Judge Chambers"), Cheryl A. Eifert ("Magistrate Judge Eifert"), and Omar Aboulhosn ("Magistrate Judge Aboulhosn"), and dismissed without prejudice as to defendants City of Huntington ("the City"), Steve Williams ("Williams"), Scott Damron ("Damron"), Joyce Clark ("Clark"), Charles McComas ("McComas"), Alex Vence ("Vence"), Jennifer Wheeler ("Wheeler"), Tonia Page ("Page"), Mark Bates ("Bates"), Mike Shockley ("Shockley"), Tom McGuffin ("McGuffin"), Tina Brooks ("Brooks"), Rebecca Howe ("Howe"), and Carol Polan ("Polan").

## II.    Factual and Procedural History

### A.    Initial Civil Rights Action in 3:17-CV-1906[3]

On March 26, 2017, Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983, in case number 3:17-CV-1906, wherein he alleged that the City of Huntington, Huntington Police Department and two named officers violated his civil rights when he was arrested for brandishing a weapon on March 17, 2016. Thereafter, Plaintiff filed a

---

[2] On October 12, 2018, Chief Judge Johnston entered an Order which referred this case to the undersigned, because "all three sitting magistrate judges in the Southern District of West Virginia have a conflict that prevents them from participating in this matter." ECF No. 4.

[3] Throughout section II.A., all ECF numbers refer to entries in the docket of Civil Action No. 3:17-CV-1906 from the Southern District of West Virginia. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record"); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

first amended complaint and a second amended complaint.  ECF Nos. 19, 33.  In his second amended complaint he alleged various civil rights violations, including that he was unlawfully arrested, unlawfully searched, unlawfully confined and maliciously prosecuted.  Further, he asserted due process violations and violations of his rights to life, self defense and to bear arms.  Id. at 9, 10, 12.

On January 17, 2018, Plaintiff filed a motion to disqualify District Judge Chambers and Magistrate Judge Aboulhosn, alleging that both judges were biased. ECF No. 58.  By order entered January 30, 2018, Judge Chambers denied Plaintiff's motion to recuse him.  ECF No. 59.  Judge Chambers' order referred to the Code of Conduct for United States Judges, Canon Three, § C, "Disqualification", and noted that, "[t]his civil action involves alleged misconduct by city police officers, for which the city is insured, and not the administration of the city.  Plaintiff's motion does not identify any interest that may reasonably be affected by the city's employment of my [adult] son."  By order entered January 30, 2018, Magistrate Judge Aboulhosn denied Plaintiff's motion to recuse him.  ECF No. 60.  Magistrate Judge Aboulhosn's order also cited to the Code of Conduct for United States Judges, Canon Three, § C, and quoted the subsection in its entirety.  Magistrate Judge Aboulhosn noted that, "[i]n this matter, Magistrate Judge Eifert recused herself when the firm of Offutt Nord Burchett[4], PLLC[5] was retained to represent the defendants."  Id. at 4.  Magistrate Judge Aboulhosn acknowledged that thereafter he "was selected to handle the Magistrate Judge's duties in this matter."  Id. However, Magistrate Judge Aboulhosn found that "the Plaintiff does not argue that any

---

[4]  The firm formerly known as Offutt Nord Burchett PLLC is now known Offutt Nord Ashworth PLLC.  https://onalegal.com.

[5]  As discussed more fully below, Magistrate Judge Eifert is the spouse of Offutt.

of the specific examples found in Canon 3(C)(1)(a) – (e) apply". Id.

On April 27, 2018, Magistrate Judge Aboulhosn entered his "Proposed Findings and Recommendation" which concluded that Defendants' motion for summary judgment should be granted. ECF No. 68. On September 27, 2018, Judge Chambers entered a "Memorandum Opinion and Order" which adopted Magistrate Judge Aboulhosn's Findings and Recommendation and granted Defendants' motion for summary judgment. ECF No. 71.

On October 29, 2018, Plaintiff filed an appeal with the United States Court of Appeals for the Fourth Circuit, in that court's docket number 18-2285. Among other arguments, the appeal claims that Judge Chambers "acted while under the influence of extreme bias." U.S.C.A. 18-2285, Document 4-1 at 14. That appeal remains pending.

**B.    Instant Civil Rights Action in 3:18-CV-1323**

On September 27, 2018, Plaintiff filed the instant civil rights complaint pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, alleging violations of his constitutional rights by the defendants. Plaintiff's complaint lists three grounds for relief, all of which essentially allege that he has been denied access to the courts. First, he alleges that the defendants conspired to permit Offutt, Nord and Ashworth to appear in the earlier case, 3:17-CV-1906, thereby denying him access to the courts, because Offutt's wife, Magistrate Judge Eifert, recused herself from presiding over that action so that her husband's firm might financially benefit, all in violation of 42 U.S.C. § 1983. ECF No. 2 at 15 – 22. Second, he contends that the defendants conspired to allow Offutt to represent the defendants in the earlier case, 3:17-CV-1906, which representation

constituted a violation of 42 U.S.C. § 1985(2) and (3), by obstructing justice and/or depriving Plaintiff of his rights and privileges to a fair, impartial and unbiased court process.  ECF No. 2 at 23 – 24.  Finally, he alleges that all defendants, except the City, knew of the marital relationship between Magistrate Judge Eifert and Offutt and conspired to permit Offutt to represent the defendants in the earlier proceedings in an effort "design[ed] to rig the court process" to impede, hinder, obstruct and defeat Plaintiff's right to justice and a fair and impartial court process.  ECF No. 2 at 26.

## III.  Legal Standard

### A.    Pro Se Litigant

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[6] is designed largely to discourage the filing of, and waste of judicial and private resources upon,

---

[6]  The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."  As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

> baseless lawsuits that paying litigants generally do not
> initiate because of the costs of bringing suit and because of
> the threat of sanctions for bringing vexatious suits
> under Federal Rule of Civil Procedure 11. To this end, the
> statute accords judges not only the authority to dismiss a
> claim based on an indisputably meritless legal theory, but
> also the unusual power to pierce the veil of the complaint's
> factual allegations and dismiss those claims whose factual
> contentions are clearly baseless.

490 U.S. at 327.


### B.    Failure to State a Claim

The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, 404 U.S. at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the

court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

### C.     § 1983 Claims

The Supreme Court has held that:

> Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.

Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254–257 (1978). In Gomez v. Toledo, 446 U.S. 635 (1980), the Supreme Court succinctly stated what a plaintiff must allege to sustain a civil rights action:

> By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

Gomez, 446 U.S. at 640.

As to whether a state or local government can be named as a defendant in a § 9183 action, the Supreme Court held that, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).


## IV.  Analysis

Plaintiff has grouped the defendants into four categories: Group 1 consists of officials and employees of the City of Huntington; Group 2 is the City of Huntington itself; Group 3 consists of the three private attorneys who represented the defendants in the earlier case, 3:17-CV-1906; and Group 4 consists of three federal judges from this District who presided over the earlier case.  The undersigned has considered each group of defendants as designated by Plaintiff.

A. **Group 1 Defendants: City of Huntington Officials and Employee Williams, Damron, Clark, McComas, Vence, Wheeler, Page, Bates, Shockley, McGuffin, Brooks, Howe and Polan.**

A review of the complaint pursuant to 28 U.S.C. § 1915A(b), reveals that Plaintiff fails to present a claim upon which relief can be granted as to the employee and officials of the City.  Actions authorized under § 1983 are intended to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights."  Wyatt v. Cole, 504 U.S. at 161.  Critically, complaints in § 1983 actions must allege that some person has deprived the plaintiff of a federal right.  Gomez, 446 U.S. at 640.  Further, in regard to the Group 1 municipal defendants, consistent with the holding of Monell, plaintiff must allege that the City's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, resulted in the violation of his civil rights.  Plaintiff has failed to demonstrate such a policy or custom was in place, much less that such a policy violated his Constitutional rights.

Defendants named by Plaintiff are: Williams, mayor of Huntington; Damron, city attorney; and Clark, McComas, Vence, Wheeler, Page, Bates, Shockley, McGuffin, Brooks, Howe, and Polan, all of whom are Huntington City Council members.   The Mayor and City Council members are elected officials, the city attorney is an employee.

Plaintiff claims that Damron was "hired by Mayor Williams and the City Council . . . [and] is thus in a 'subordinate' position" to the other Group 1 defendants.  Id. at 17. Plaintiff then claims that the Mayor and City Council's decision to permit Damron to become "secondary counsel" to Offutt's firm's lead counsel in the defense of the earlier suit, made the City liable for violating Plaintiff's civil rights. Id. at 17, 24.   Plaintiff

9

appears to concede in his own pleadings that Damron, was subordinate to City policymakers, and had no authority to enact a City policy which might have resulted in a violation of his civil rights. Accordingly, Plaintiff fails to state a claim upon which relief may be granted as to Damron.

Although Plaintiff alleges that all defendants have "conspired" to deprive him of his federal rights, he makes no specific allegations against the Mayor and City Council defendants, other than they "approved and/or acquiesced" to the selection of Offutt's firm to defend the suit. ECF No 2 at 16. Although Plaintiff claims that those defendants made a policy decision in approving or acquiescing to Offutt's firm's representation of the City, he does not allege any specific act committed by each named defendant which violated his federal rights. Id.

As noted by Judge Chambers in his order denying Plaintiff's motion to recuse himself from the earlier action, 3:18-CV-1906, that civil action "involve[d] alleged misconduct by city police officers, for which the city is insured, and not the administration of the city." 3:18-CV-1906, ECF No. 59 at 1. Moreover, Plaintiff's Exhibit C attached to his complaint, is a letter from a Nationwide insurance claims specialist which confirms that Nationwide, "retained Steven Nord from the law firm of Offutt Nord Burchett to defend the lawsuit [Plaintiff] filed." ECF No. 2 – 3. Accordingly, it is clear from an exhibit submitted by Plaintiff, that the insurance carrier, Nationwide, selected the law firm of Offutt Nord Burchett to defend the earlier lawsuit filed by Plaintiff, and that the officials and employees of the City were not involved in the decision of which lawyers would defend Plaintiff's earlier suit. Because Plaintiff cannot demonstrate that there was a municipal policy or custom, adopted by any City official, which inflicted the

injury he complains of, the City's officials are not liable for any alleged violation under §
1983.

Failure to make such allegations was previously considered by the Fourth Circuit
in Barrett v. Bd. of Educ. of Johnston Cty., N.C., 590 F. App'x 208, 210 (4th Cir. 2014).
There, parents and their minor child initiated a § 1983 action against the school board
and its members, alleging wrongful exclusion from school board programs, and abuse.
The Fourth Circuit concluded that the claims failed because:

> There were no factual allegations showing that the Board
> had a policy, custom, or practice that led to the alleged
> violations. The Appellants merely expressed a belief or an
> opinion without any supporting factual allegations. The
> Appellants also failed to identify with factual allegations that
> any of individual defendants had final authority to establish
> municipal policy with respect to the actions ordered. For the
> same reason, the Appellants failed to show that the Board
> engaged in deliberate indifference to their rights or that it had
> a persistent and widespread practice that led to the alleged
> violations.

Id.  Plaintiff here complains that his civil rights were violated and he was denied access
to the Courts because the City had an insurance policy under which the insurer, not
the City, selected an attorney, which attorney had a conflict with one of three federal
magistrates judges in the District where Plaintiff filed suit.  Plaintiff alleges no City
policy or custom which showed deliberate indifference to his rights, nor does he allege
any facts to support such a contention.  Accordingly, Plaintiff fails to state a claim upon
which relief may be granted as to the municipal defendants named in Group 1.


### B.    Group 2: City of Huntington

A review of the complaint pursuant to 28 U.S.C. § 1915A(b), reveals that Plaintiff

fails to present a claim upon which relief can be granted as to the City of Huntington. Actions authorized under § 1983 are intended to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." Wyatt v. Cole, 504 U.S. at 161. Complaints in § 1983 actions must allege that some person has deprived him of a federal right. Gomez, 446 U.S. at 640. However,

> For purposes of Section 1983, a municipality is considered a "person" and thus is subject to suit. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). That said, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. 2018. Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. 2018.

Hunter v. Town of Mocksville, N. Carolina, 897 F.3d 538, 553–54 (4th Cir. 2018). Accordingly, the City may not be held liable for the alleged actions of its employee, Damron, or the named city council defendants or officials, regardless of whether Damron or individual city council members individually violated Plaintiff's civil rights.

Likewise, the decisions of the mayor and city council members may lead to the City being held liable for civil rights violations, if Plaintiff can demonstrate those decisions led to a municipal policy which resulted in a violation of his civil rights:

> [I]n assessing whether a municipality may be held liable for the constitutional or statutory violations of their decisionmakers, the touchstone inquiry is whether "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Liverman v. City of Petersburg*, 844 F.3d 400, 413 (4th Cir. 2016) (internal quotation marks omitted). If so, the decisionmaker's actions may fairly be attributed as reflecting

municipal policy. *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292.

<u>Hunter</u>, 897 F.3d at 554–55.  Here, Plaintiff alleges that "[t]he Mayor and City Council Defendants were expressing the policy of the entity, the City of Huntington, by choosing to allow Judge Eifert's husband's law firm into the [earlier] case."  ECF No. 2 at 16. However, other than that broad assertion of "policy", Plaintiff alleges no specific policy of the City which supports his claims.

As discussed above, Plaintiff's Exhibit C [ECF No. 2-3] attached to his complaint, demonstrates the opposite of Plaintiff's claim that the City, by virtue of its mayor's and city council members' decision making, created a policy, which through its implementation, violated Plaintiff's civil rights.  Rather, Exhibit C, an October 26, 2017, letter from a Nationwide insurance claims specialist, confirms that Nationwide, "retained Steven Nord from the law firm of Offutt Nord Burchett to defend the lawsuit [Plaintiff] filed."  <u>Id.</u>  It is abundantly clear that the City had an ***insurance policy*** which provided coverage and legal representation in case of suit and that Nationwide, and not the City, assigned counsel to represent the City.  However, Plaintiff points to no ***municipal policy*** which, when followed, resulted in a violation of his civil rights as a result of Nationwide's action.  Rather, Exhibit C demonstrates that insurance carrier, Nationwide, selected a law firm to represent the City, and that no City policy was responsible for, or City official requested, the selection of the firm.

Accordingly, even construing Plaintiff's pleading liberally, he fails to state a claim upon which relief can be granted as to the City of Huntington.

13

### C.    Group 3: Private Attorneys Offutt, Nord, and Ashworth

Plaintiff named three private attorneys as defendants in this civil rights complaint. Actions authorized under § 1983 are intended to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." Wyatt v. Cole, 504 U.S. at 161.  None of the three private attorneys is alleged by Plaintiff to be a state actor.

The Fourth Circuit has recently held that, "private actors are not amenable to suit under § 1983.  In addition, private attorneys do not act under color of state law and a § 1983 suit may not be maintained against an attorney based on his representation." Marcantoni v. Bealefeld, 734 F. App'x 198, 199 (4th Cir. 2018) (internal citations omitted).  Even construing Plaintiff's pleading liberally, he fails to state a claim upon which relief can be granted as to the three private attorneys, Offutt, Nord and Ashworth, whom he named as defendants in Group 3.


### D.    Group 4: Federal Judges from the Southern District of West Virginia

Plaintiff named three federal judges from this District as defendants in his civil rights complaint.  Actions authorized under § 1983 are intended to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." Wyatt v. Cole, 504 U.S. at 161.  None of the three federal judges is alleged by Plaintiff to be a state actor.  At best, federal actors may be named as defendants in actions filed pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  However, Plaintiff has filed a cause of action alleging liability pursuant to 18 U.S.C. §§ 1983, 1985 and 1986, none of which statutes

apply to federal actors.

Furthermore, even if Plaintiff had filed his action pursuant to <u>Bivens</u>, it is well established that, " '[J]udges are absolutely immune from suit for a deprivation of civil rights' for actions taken within their jurisdiction." <u>Foster v. Fisher</u>, 694 F. App'x 887, 888 (4th Cir. 2017) (quoting <u>King v. Myers</u>, 973 F.2d 354, 356 (4th Cir. 1992)).   As recognized by the Supreme Court, judges are "immune from civil suit 'for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction.'" <u>Butz v. Economou</u>, 438 U.S. 478, 508 (1978) (quoting <u>Bradley v. Fisher</u>, 80 U.S. 335, 13 Wall. 335 (1871)).  The Court in <u>Butz</u> cited repeatedly to the reasoning of <u>Bradley</u>, noting that "the principle of immunity for acts done by judges 'in the exercise of their judicial function' had been 'the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country.'" <u>Id.</u>  Further, the Court recognized that:

> If a civil action could be maintained against a judge by virtue of an allegation of malice , judges would lose "that independence without which no judiciary can either be respectable or useful." [ ] Thus, judges were held to be immune from civil suit "for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction."

<u>Id.</u> at 509 (quoting <u>Bradley</u>, 13 Wall at 347, 354).   This immunity has long been recognized by both federal and state[7] courts.

---

[7]   In <u>Foster</u>, the Fourth Circuit considered a § 1983 against a state magistrate, a state trial judge and other defendants, and quoting <u>King</u>, recognized that:

> "Magistrates are judicial officers, and are thus entitled to absolute immunity under the same conditions as are judges." *Id.* However, to be entitled to immunity, the act taken must be a "judicial act"—i.e., a "function [that is] normally performed by a judge, and [for which] the parties dealt with the judge in his or her judicial capacity." *Id.* (citation

Plaintiff asserts that all three named judges conspired against him, and further claims that two of the three named judges were biased or took prejudicial action against him based on their relatives' jobs. Even construing Plaintiff's pleading liberally, he fails to state a claim upon which relief can be granted as to the three members of the federal judiciary, Judge Chambers, Magistrate Judge Eifert and Magistrate Judge Aboulhosn, all of whom are absolutely immune from suit for judicial acts, including any judicial act which might result in a deprivation of civil rights.

First, Plaintiff claims that Magistrate Judge Eifert conspired with other defendants to benefit her spouse, a lawyer who was hired by insurance company Nationwide to defend Plaintiff's earlier lawsuit.  Magistrate Eifert's only action in that suit after her husband's firm was hired by Nationwide was to recuse herself from any further involvement with the case[8].  Such a recusal was clearly a judicial act and function that was normally taken by the Court.  Accordingly, Magistrate Judge Eifert is clearly immune from Plaintiff's suit for a deprivation of civil rights.

Second, Plaintiff claims that Judge Chambers' refusal to recuse himself from Plaintiff's earlier case which involved the City of Huntington, which employed Chambers'

---

and internal quotation marks omitted). In addition, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (internal quotation marks omitted).

Foster v. Fisher, 694 F. App'x 887, 888 (4th Cir. 2017).

[8]  In that case, Steven K. Nord entered a notice of appearance on September 28, 2017, on behalf of defendants Shane Bills, the City of Huntington, Joey Koher, Jason Smith, James Talbert and Casey Williamson. 3:17-CV-1906, ECF No. 39.  The following day, September 29, 2017, Magistrate Judge Eifert entered an order which transferred the case to Magistrate Judge Aboulhosn for total pretrial management and submission of proposed findings of fact and recommendations for disposition.  3:17-CV-1906, ECF No. 40.

16

adult son, demonstrated bias against Plaintiff and for the defendant City of Huntington. Judge Chambers considered Plaintiff's motion to recuse and found that Plaintiff's motion to recuse "does not identify any interest that may reasonably be affected by the city's employment of my son."   Such a determination was clearly a judicial act and function that was normally taken by the Court.  Accordingly, Judge Chambers is clearly immune from Plaintiff's suit for a deprivation of civil rights.

Plaintiff further alleges that Judge Chambers and Magistrate Judges Aboulhosn and Eifert conspired with one another "to rig the court process by arranging for Eifert's husband's law firm to enter the case and supplant City Attorney Damron."  ECF No. 2 at 19.  As noted above, the October 26, 2017, letter from a Nationwide insurance claims specialist which confirms that Nationwide, "retained Steven Nord from the law firm of Offutt Nord Burchett to defend the lawsuit [Plaintiff] filed," was attached to Plaintiff's complaint as Exhibit C.  ECF No. 2 – 3.   Accordingly, it is clear from an exhibit submitted by Plaintiff that the insurance carrier, Nationwide, selected the law firm of Offutt Nord Burchett to defend the earlier lawsuit filed by Plaintiff, and that the named federal judges had no role in the selection of attorneys to defend the City in the earlier lawsuit.  Therefore, Judge Chambers and Magistrate Judges Aboulhosn and Eifert, are immune from Plaintiff's claims for violation of his civil rights under this theory.

Even construing Plaintiff's pleading liberally, he fails to state a claim upon which relief can be granted as to the three named federal judges, Judge Chambers, Magistrate Judge Aboulhosn and Magistrate Judge Eifert, and his complaint as to these defendants should be dismissed with prejudice.

**V.  Recommendation**

For the foregoing reasons, this Court **RECOMMENDS** that the Complaint [ECF No. 2] be **DISMISSED WITH PREJUDICE as to Defendants Offutt, Nord, Ashworth, Judge Chambers, Magistrate Judge Eifert and Magistrate Judge Aboulhosn**, based on the failure to state a claim upon which relief can be granted.  This Court further recommends that Complaint [ECF No. 2] be **DISMISSED WITHOUT PREJUDICE as to Defendants City of Huntington, Williams, Damron, Clark, McComas, Vence, Wheeler, Page, Bates, Shockley, McGuffin, Brooks, Howe and Polan.**

Any party may, within fourteen (14) days after being served with a copy of this Proposed Findings and Recommendation, file with the Clerk of the Court written objections.  Objections shall identify the portions of the Proposed Findings and Recommendation to which objection is made, and the basis for such objection, and shall not exceed twenty (20) pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with Local Rule of Civil Procedure ("LR Civ. P") 7.1(a)(2).  A copy of such objections should also be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Failure to timely file objections to the Proposed Findings and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Proposed Findings and Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985); Wells v. Shriners Hosp., 109 F.3d 198 (4th Cir 1997).

These Proposed Findings and Recommendation completes the referral from the

District Court.  The Clerk is directed to terminate the Magistrate Judge association with this case.

      The Clerk of the Court is directed to send a copy of this Order to the Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record via electronic means.

      DATED:      November 16, 2018

                    */s/ Robert W. Trumble*
                    ROBERT W. TRUMBLE
                    UNITED STATES MAGISTRATE JUDGE